## Simons, Brittain & English, Inc., v. Citizens National Bank of Monessen.

*Architects—Practicing profession of, without license—Ineligibility of corporations—Act of July 12, 1919.*

1. Under the Act of July 12, 1919, P. L. 933, a corporation cannot secure a certificate qualifying it to practice the profession of an architect, as the act does not authorize the licensing of a corporation so to act.

2. An architect who has failed to secure a license, as required by the act, cannot maintain an action for professional services.

Statutory demurrer. C. P. Westmoreland Co., Aug. T., 1921, No. 492.

*John E. McCalmont* and *J. Raymond Sowash,* for plaintiff.

*Wyant & Abraham,* for defendant.

DOM, J., May 8, 1924.—This is an action in *assumpsit* to recover a balance of $1320, with interest from July 31, 1920, alleged to be due on a written con-

tract entered into between the plaintiff corporation and defendant corporation, dated Jan. 31, 1920.

The defendant filed an amended affidavit of defence raising questions of law, as provided by section 20 of the "Practice Act of 1915." The questions of law raised, briefly stated, are as follows:

*(a)* That the plaintiff corporation violated the provisions of the Act of Assembly of July 12, 1919, P. L. 933, governing the practice of architecture.

*(b)* That the plaintiff corporation, in entering into the contract in question, exceeded the powers conferred upon it by its charter; that the contract was *ultra vires* and could not be enforced.

As to the question of law *(b)* raised, without doubt the contract is *ultra vires,* but we need not determine whether or not it is enforceable at law, for, as we view the matter, the determination of the *(a)* question of law will dispose of the case.

Notwithstanding the effort made by the plaintiff, by its amended statement of claim, to get itself within the provisions of section 13 of the Act of Assembly of July 12, 1919, P. L. 933, it is fatuous, for a mere reading of the admitted contract clearly established that the relation of the plaintiff and defendant was that of architect and owner. Notice some of the provisions of the contract:

"In the event that the architect is also the contractor for any part of the work"—

(Article 1.) ". . . the architect proposes to furnish preliminary sketches, . . . drawings and specifications . . . and general superintendence of the building operation, award contracts, . . . audit all accounts . . . for the owner at Monessen, Pa."

(Article 2.) "In all transactions between the owner and contractor, the architect is to act as owner's agent; . . . a representative of the architect will make visits to the building for the purpose of superintendence, of such frequency and duration as in the architect's judgment will suffice. . . ."

(Article 3.) "The architect will demand of the contractors, . . . but the architect's superintendence . . ."

(Article 4.) "Drawings and specifications are instruments of service, and as such are to remain the property of the architects."

(Article 6.) "In the event that the architect is also the contractor for any part of the work. . . ."

In the main, it will be readily seen, the services which the plaintiff corporation, styling itself "Architect"—not even "Bank Architects," as alleged in the amended statement of claim—was to render were: *(a)* Preparation of plans and specifications; *(b)* superintendence of the construction under said plans and specifications.

Sections 13 and 14 of the Act of July 12, 1919, P. L. 933, provide:

"Section 13. On and after July first, one thousand nine hundred nineteen, it shall be unlawful for any person in the State of Pennsylvania to enter upon the practice of architecture in the State of Pennsylvania, or to hold himself or herself forth as an architect, or as a 'registered architect,' or to use any work or any letters or figures indicating or intended to imply that the person using the same is a 'registered architect,' unless he or she has complied with the provisions of this act and is the holder of a certificate of qualification to practice architecture, issued or renewed and registered under the provisions of this act.

"This act shall not be construed to prevent persons other than architects from filing applications for building permits or obtaining such permits; nor

shall it be construed to prevent such persons from designing buildings and supervising their construction, provided their drawings are signed by the authors with their true appellation as engineer or contractor or carpenter or et cetera, but without the use in any form of the title of architect."

"Section 14. Any person violating any of the provisions of this act shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced for the first offence to pay a fine of not less than fifty dollars nor more than one hundred dollars; and for a second or any subsequent offence shall be sentenced to pay a fine of not less than two hundred dollars nor more than five hundred dollars, or to undergo an imprisonment in the county jail of not more than six months, either or both, at the discretion of the court."

We must not overlook the fact that the Act of July 12, 1919, aforesaid, regulating the practice of architecture in the Commonwealth of Pennsylvania, and providing penalties for its violation, was in full force and effect before and at the time the plaintiff corporation, as "Architect," entered into the contract of Jan. 31, 1920, to prepare plans and specifications and to superintend the construction under said plans.

We should note, also, that the plaintiff corporation, before entering into the contract, had notice of the approval of the act aforesaid and had filed application for registration under section 7, sub-division C, of said act. (See amended statement of claim.) Plaintiff also alleges that it "was directed by the said State Board of Examiners to continue in the operation of its business in the same manner and under the same title and style as had been done on and prior to the approval of said act, and until such time as the rights of corporations to register as architects could be determined by said board," and that the board did not act on the application for registration as an architect until on or about July 19, 1923; yet these facts are denied in the brief furnished by counsel for defendant, and to which is attached a copy of a letter dated Oct. 31, 1922, and written to the plaintiff by the board, advising it that, "according to the former action of the board, your firm may not use the title architect or any derivation thereof." Be that as it may, we know of no law or authority, and counsel has not cited any, that would warrant the board, the creature of the said act, for even a limited time, in suspending the operation of the law or in granting any kind of concession to the plaintiff for the practice of architecture.

The plaintiff insists that before and at the time of the approval of the aforesaid act it was violating no law, and apparently seeks shelter under section 6 of said act, but surely said section provides only for natural persons and not corporations. If it were impossible for a corporation to register under the act at the time of its approval, there is nothing in the act to provide registration by a corporation later. In the act, references are made to persons by the words "he," "she," "himself," "herself;" the personal pronoun is used all through the act, and, by implication, it appears to us that the practice of architecture by any but a natural person is prohibited. If none other than natural persons can register, and registration is a prerequisite to the practice of architecture, it necessarily follows that corporations cannot qualify to exercise the profession of architecture. Aside from the aforesaid act, it has been pretty well decided that only natural persons can qualify to practice a profession.

The pleadings show the plaintiff to be a corporation. The said act makes it unlawful to practice architecture unless the provisions of said act have been complied with, and makes violations of its provisions a misdemeanor. Surely

the plaintiff corporation is not qualified, and cannot qualify, and its contract, the basis of this action, is, therefore, illegal and void.

In Johnson v. Hulings, 103 Pa. 498, Mr. Justice Gordon said: "There is, therefore, no doubt but that the plaintiff was engaged in the purchase and sale of real estate as a business, and so came within the definition of 'real estate broker.' . . . Such being the case, the plaintiff was, by virtue of the 18th section of the Act of April 10, 1849, brought within the provisions of the Act of May 27, 1841, and was subject to the penalty prescribed in case of a violation of those provisions. The result follows that Johnson, in the transaction in hand, stands in the position of a real estate broker who seeks to enforce a contract which, under the statute, he had no right to make, and by the making of which he subjected himself to the penalty imposed by the statute."

"An action founded upon a transaction prohibited by a statute cannot be maintained, although a penalty be imposed for violating the law and it is not expressly declared that the contract is void:" Robinson & Conn v. Garvey, 25 Lanc. Law Rev. 357.

Judge Head, in Snaman v. Maginn, 77 Pa. Superior Ct. 287, in writing about fictitious names, failure to register, effect of failure, and the Act of June 28, 1917, P. L. 645, declares: "It appears to me that reason alone, without authority, would necessarily lead us to the conclusion that a contract, the making of which is positively prohibited by statute, cannot be enforced by the aid of the courts of the state in which the statute has been enacted. In vain would the legislative power thunder its prohibitions against the performance of a given act, if the co-ordinate branch of the government, the courts, would lend their powerful aid to the transgressor in recovering the fruits of the unlawful transaction."

"If a plaintiff is compelled to rely upon an illegal contract to make out his right to what he asks, he cannot succeed:" Vandegrift v. Vandegrift, 226 Pa. 254.

"An action founded upon a transaction prohibited by a statute cannot be maintained, although a penalty be imposed for violating the law and it be not expressly declared that the contract is void:" Seidenbender et al. v. Charles's Admin'r, 4 S. & R. 151.

"Where a contract is made which is prohibited and made unlawful by statute, it is void, though the statute itself does not mention that it shall be so, but only inflicts a penalty on the offender:" Lutz v. Weidner, 1 Woodward Decisions, 428.

"Courts having in view public interest will not lend their aid to the enforcement of an unlawful contract:" Swing, Trustee, v. Munson, 191 Pa. 582.

In the case of Simons, Brittain & English, Inc., v. Union Trust Co. of Washington Inc. (C. P. Washington Co.), 3 D. & C. 854, Cummins, J., speaking for the court, decided:

"1. The contract of an architect who has not been licensed as provided by the Act of July 12, 1919, P. L. 933, is void.

"2. A corporation cannot secure a certificate qualifying it to practice the profession of an architect."

The plaintiff in the case at bar was also plaintiff in the aforesaid Washington County case.

And now, May 8, 1924, upon due consideration, it being our opinion that the decision of law raised by the pleadings disposes of the whole of plaintiff's claim, judgment is hereby entered for the defendant, and exception noted for the plaintiff.                    From William S. Rial, Greensburg, Pa.